UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------X
                                                   :        Civil Action No. 07-7972 (PKC)

IN RE TARRAGON CORPORATION     :
SECURITIES LITIGATION                    :        ECF Case
                                                   :
-------------------------------------------------------------X

## LEAD PLAINTIFF PAUL BERGER'S MEMORANDUM OF LAW IN OPPOSITION TO GRANT THORNTON LLP'S <u>MOTION TO DISMISS THE AMENDED COMPLAINT</u>

Jeffrey S. Abraham (JA-2946)
Arthur J. Chen (AC-5233)
**ABRAHAM, FRUCHTER & TWERSKY, LLP**
One Penn Plaza, Suite 2805
New York, New York 10119
Telephone: (212) 279-5050
Fax: (212) 279-3655

**Plaintiff's Lead Counsel**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................... ii

SUMMARY OF FACTS ........................................................ 1

ARGUMENT ................................................................ 3

I.    PLAINTIFF HAS IDENTIFIED GRANT THORNTON'S FALSE STATEMENT WITH RESPECT TO TARRAGON'S 2005 FINANCIAL STATEMENTS AND THE REASON WHY IT WAS FALSE ................................. 3

II.   THE SUPREME COURT'S RECENT *STONERIDGE* DECISION ELIMINATES THE NEED TO ALLEGE SPECIFIC STATEMENTS BY GRANT THORNTON .... 4

III.  PLAINTIFF HAS PROPERLY ALLEGED A STRONG INFERENCE OF SCIENTER WITH RESPECT TO GRANT THORNTON ....................... 6

IV.  PLAINTIFF HAS PROPERLY ALLEGED LOSS CAUSATION ................. 8

    A.   Allegations of Loss Causation Are Only Subject to the Notice Pleading Requirements of Rule 8(a)(2) ........................................ 8

    B.   Issues of Loss Causation Should Not be Resolved on a Rule 12(b)(6) Motion ... 9

    C.   The Declines in the Price of Tarragon Stock Alleged Are Sufficient to Allege Loss Causation ...................................................... 9

    D.   Loss Causation is Adequately Tied to Grant Thornton's Misstatements and the Other Materially Misleading Statements for Which it Was Responsible ...... 13

V.   IF THE COURT DETERMINES THAT ANY ASPECT OF THE COMPLAINT IS INADEQUATELY PLED, LEAVE TO AMEND SHOULD BE GRANTED ....... 14

CONCLUSION ............................................................. 15

## TABLE OF AUTHORITIES

**Cases**                                                                                                            **Page(s)**

*Central Bank of Denver v. First Interstate Bank of Denver,*
    511 U.S. 164 (1994) .................................................... 6

*Cyber Media Group v. Island Mort. Network, Inc.,*
    183 F. Supp. 2d 559 (S.D.N.Y. 2002) ........................................ 6

*Deephaven Private Placement Trading, Ltd. v. Grant Thornton LLP,*
    454 F.3d 1168 (10th Cir. 2006) ............................................. 3

*Dura Phramaceuticals, Inc. v. Broudo,*
    544 U.S. 336 (2005) ...................................................... 8

*Emergent Capital Inv. Mgmt, LLC v. Stonepath Group, Inc.,*
    343 F.3d 189 (2d Cir. 2003) ............................................... 9

*Hunt v. Enzo Biochem, Inc.,*
    471 F. Supp. 2d 390 (S.D.N.Y. 2006) ........................................ 8

*In re AOL Time Warner*
    503 F. Supp. 2d 666 (S.D.N.Y. 2007) ....................................... 10

*In re DRDGOLD Ltd. Sec. Litig.,*
    472 F. Supp. 2d 562 (S.D.N.Y. 2007) ........................................ 9

*In re Enron Corp. Securities, Derivative & "ERISA" Litigation,*
    439 F. Supp. 2d 692 (S.D. Tex. 2006) ...................................... 10

*In re Lernout & Hauspie Sec. Litig.,*
    230 F. Supp. 2d 152 (D. Mass. 2002) ........................................ 3

*In re Leslie Fay Cos. Sec. Litig.,*
    835 F. Supp. 167 (S.D.N.Y. 1993) .......................................... 7

*In re Loewen Group Inc. Sec. Litig.,*
    395 F. Supp. 2d 211 (E.D. Pa. 2005) ....................................... 11

*In re NTL, Inc. Sec. Litig,*
    02 Civ. 3013 (LAK)(ASP), 2006 U.S. Dist. LEXIS 5346 (S.D.N.Y. Feb. 14, 2006) ... 10

*In re NYSE Specialists Sec. Litig.*,
    405 F. Supp. 2d 281 (S.D.N.Y. 2005) .................................. 8

*In re Omnicom Group, Inc. Sec. Litig*,
    02 Civ. 4483 (WHP), 2008 U.S. Dist. LEXIS 6033 (S.D.N.Y. Jan. 29, 2008) ....... 11

*In re Parmalat Sec. Litig.*,
    479 F. Supp. 332 (S.D.N.Y. 2007) ..................................... 8

*In re Philips Servs. Corp. Sec. Litig.*,
    383 F. Supp. 2d 463 (S.D.N.Y. 2004) .................................. 7

*In re Seitel, Inc. Sec. Litig.*,
    447 F. Supp. 2d 693 (S.D. Tex. 2006) ................................. 9

*In re Sonus Networks, Inc. Sec. Litig.*,
    247 F.R.D. 244 (D. Mass. 2007) ...................................... 7

*In re Take-Two Interactive Sec. Litig.*,
    06 CIV. 803 (SWK), 2008 U.S. Dist. LEXIS 31463 (S.D.N.Y. April 16, 2008) ...... 11

*In re Tower Auto. Sec. Litig.*,
    483 F. Supp. 2d 327 (S.D.N.Y. 2007) .................................. 8

*In re Unumprovident Corp. Sec. Litig.*,
    396 F. Supp. 2d 858 (E.D. Tenn 2005) ................................. 9

*Joffee v. Lehman Bros., Inc.*,
    410 F. Supp. 2d 187 (S.D.N.Y. 2006) ................................. 11

*Kinney v. Metro Global Media, Inc.*,
    170 F. Supp. 2d 173 (D.R.I. 2001) .................................... 3

*Lattanzio v. Deloitte & Touche, LLP*,
    476 F.3d 147 (2d Cir. 2007) ........................................ 5, 13

*Lentell v. Merrill Lynch & Co.*,
    396 F.3d 161, 175 (2d Cir. 2005) .................................... 8, 10

*Novak v. Kasaks*,
    216 F.3d 300 (2d Cir. 2000) .......................................... 6

*P. Schoenfeld Asset Mgmt. LLC v. Cendant Corp.*,
 142 F. Supp. 2d 589 (D.N.J. 2001) .................................................. 3

*Schleicher v. Wendt*,
 529 F. Supp. 2d 959 (S.D. Ind. 2007) ............................................. 10

*Stoneridge Investment Partners v. Scientific-Atlanta, Inc.*,
 __ U.S. __, 128 S. Ct. 761 (2008) ............................................ 5, 14

*Teachers' Retirement Sys. Of La. v. Hunter*,
 477 F.3d 162 (4th Cir. 2007) ..................................................... 11

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
 __ U.S. __, 127 S. Ct. 2499 (2007) .............................................. 7

*Ventura v. Merrill Lynch & Co.*,
 07 CIV 6677 (JFK), 2008 U.S. Dist. LEXIS 37993 (S.D.N.Y. May 8, 2008) .......... 10

*Virginia Bankshares v. Sandberg*,
 501 U.S. 1083 (1991) ............................................................ 12

**Statutes and Rules**

15 U.S.C. §78j .............................................................. 4, 5, 8

15 U.S.C. §7214(g)(2) ............................................................ 4

15 U.S.C. §7215(b)(5)(A) ......................................................... 4

17 C.F.R. §210.8-02. ............................................................. 5

17 C.F.R. §210.10-01(d) .......................................................... 5

Fed. R. Civ. Pro. 8(a)(2) ........................................................ 8

Fed. R. Evid. 803(8) ............................................................. 4

Lead Plaintiff Paul Berger ("Plaintiff"), through his undersigned attorneys, respectfully submits this memorandum of law in response to the motion made by Grant Thornton LLP ("Grant Thornton") to dismiss the Amended Class Action Complaint (the "Complaint").

## SUMMARY OF FACTS

Grant Thornton was the public accounting firm retained by Tarragon Corporation ("Tarragon" or the "Company") with respect to the audit and review of the Company's financial statements. Complaint ¶13. In that capacity, Grant Thornton opined that the financial statements of for the fiscal year ended December 31, 2005 were "in conformity with accounting principles generally accepted in the United States of America." Complaint ¶37. In truth and in fact, those financial statements did not comply with GAAP (generally accepted accounting principles) and Tarragon was subsequently forced to restate those results. Complaint ¶¶40 and 42.

The Public Company Accounting Oversight Board ("PCAOB") issued a report dated June 28, 2007 (the "PCAOB Report") with respect to its 2006 inspection of Grant Thornton. A copy of that report is publicly available and can be obtained from the PCAOB's Internet site. *See* PCAOB Report (attached as Exhibit C to the Affidavit of Jeffrey S. Abraham ("Abraham Aff.")). The PCAOB Report criticizes Grant Thornton's audit of "Issuer A" for "not having obtained sufficient competent evidential matter to support its opinion of the issuer's financial statement." *Id.* at page 4. The PCAOB determined that Grant Thornton "failed to identify a departure from GAAP that it should have identified and addressed before the audit report." *Id.* That departure was the failure to consolidate an almost 90% owned subsidiary with the parent company's financial statements. *Id.* at pages 4-5. Grant Thornton disputed the PCAOB's finding and claimed that its engagement team knew of the relevant issues prior to issuing its audit report. *See* PCAOB Report at Appendix C, page 2.

An enterprising and intelligent reporter was able to comprehend that Issuer A referred to in the PCAOB Report was, in fact, Tarragon. On July 17, 2007, that reporter, working for *Bloomberg*, published an article disclosing that fact. Complaint ¶102. Grant Thornton does not deny that the *Bloomberg* reporter correctly identified Issuer A as Tarragon.

In addition to opining on Tarragon's annual financial statements, Grant Thornton reviewed the quarterly financial statements published by Tarragon. *E.g.*, Complaint ¶37. Those financial statements were also materially false or misleading because of a failure to follow GAAP in applying the percentage-of-completion methodology. *E.g.*, Complaint ¶52. This ultimately resulted in Tarragon taking substantial accounting write downs and being in default on various debt covenants. Complaint ¶¶60-61. In reaction to these disclosures, the price of Tarragon's stock imploded. Complaint ¶¶62 and 97.

These write downs and impairment charges were presaged by the repeated failure of Tarragon management to meet the budgets utilized for purposes of recognizing revenues based upon the percentage of completion method (*see* PCAOB Report at page 5) and inadequacies in Tarragon's internal controls. *See* Tarragon Form 10-K for the fiscal year ended December 31, 2007 at 145 (attached as Exhibit G to the Abraham Aff.). These were facts Grant Thornton knew well before the time that the impairment charges were actually made public. *See, e.g.*, PCAOB Report at pages 4-5.

## ARGUMENT

### I. PLAINTIFF HAS IDENTIFIED GRANT THORNTON'S FALSE STATEMENT WITH RESPECT TO TARRAGON'S 2005 FINANCIAL STATEMENTS AND THE REASON WHY IT WAS FALSE

The Complaint alleges the specific statement at issue made by Grant Thornton (Complaint ¶37) as well as the reasons why the statement was false. Complaint ¶¶72-80. Indeed, the falsity of the statement was acknowledged through a subsequent restatement. Complaint ¶¶40 and 42.

Notwithstanding these well-pleaded facts, Grant Thornton asserts that it made no false statements because Plaintiff has not properly alleged that Grant Thornton's *opinion* -- apparently as distinguished from the underlying statements themselves -- lacked a reasonable basis. *See* Grant Thornton Memo. at 9 (citing *Deephaven Private Placement Trading, Ltd. v. Grant Thornton LLP*, 454 F.3d 1168, 1174 (10th Cir. 2006)). However, in fact, the Complaint alleges that Grant Thornton failed to obtain sufficient competent evidential matter to support its opinion. Complaint ¶102; *see also* PCAOB Report at pages 4-5. This failure to have sufficient evidence to support an audit opinion is the same as lacking a reasonable basis for an opinion. *Accord*, *In re Lernout & Hauspie Sec. Litig.*, 230 F. Supp. 2d 152, 163 (D. Mass. 2002); *Kinney v. Metro Global Media, Inc.*, 170 F. Supp. 2d 173, 178-79 (D.R.I. 2001); *P. Schoenfeld Asset Mgmt. LLC v. Cendant Corp.*, 142 F. Supp. 2d 589, 609-610 (D.N.J. 2001).

Grant Thornton suggests that these allegations are inadequate because they are based upon the improper use of a confidential report. Grant Thornton Memo. at 10-11. However, this argument collapses in light of the fact that the PCAOB Report is available to the public on the PCAOB website. *See* Abraham Affidavit at ¶4.

Similarly, Grant Thornton cites to statutory provisions in an effort to somehow transform the PCAOB Report, a publicly available document, into one which is confidential. However, this argument lacks merit as the relevant statutory provision of the Sarbanes-Oxley Act of 2002, Pub. L. 107-204 (H. Rep. 3763), 107th Cong. 2d Sess. (July 30, 2002), provides that reports such as the PCAOB Report shall be "made available in appropriate detail to the public . . . ." 15 U.S.C. §7214(g)(2). The PCAOB's *deliberations*, however, as well as documents prepared or received by the PCAOB are confidential and may not be used in any civil proceeding. 15 U.S.C. §7215(b)(5)(A). Here, Plaintiff is relying only on the publicly available PCAOB Report and *not* on any of the PCAOB's confidential information.

Nor is the *Bloomberg* report that the audit at issue was that of Tarragon idle speculation as Grant Thornton seeks to suggest. In reality, the facts related to Issuer A contained in the PCAOB Report are sufficiently unique that there exists no other public company (certainly not to Plaintiff's knowledge) which could possibly fit that description.

Finally, Grant Thornton's assertion that the PCAOB Report constitutes inadmissible hearsay lacks merit. Grant Thornton pointedly fails to cite a single case or authority supporting its argument. Nor could it as a public report of a public agency such as the PCAOB falls within a well-recognized exception to the hearsay rule. *See* Fed. R. Evid. 803(8).

## II. THE SUPREME COURT'S RECENT *STONERIDGE* DECISION ELIMINATES THE NEED TO ALLEGE SPECIFIC STATEMENTS BY GRANT THORNTON

The law in this Circuit has been that an auditing firm such as Grant Thornton can not be primarily liable under Section 10(b) of the Exchange Act absent a specific statement by that auditing firm opining as to those financial statements complying with GAAP. *See, e.g.*,

*Lattanzio v. Deloitte & Touche, LLP*, 476 F.3d 147 (2d Cir. 2007). In *Lattanzio*, the Second Circuit rejected an argument that a duty imposed by SEC rules could serve as the basis for primary liability. *Id.* at 154-56.

However, Plaintiff respectfully submits, that the rationale of *Lattanzio* has been effectively overruled by the Supreme Court's recent decision in *Stoneridge Investment Partners v. Scientific-Atlanta, Inc.*, __ U.S. __, 128 S. Ct. 761 (2008). In *Stoneridge*, the Court specifically held that primary liability under Section 10(b) was not dependent on the actual making of a statement. *Id.* 128 S. Ct. at 769 ("If this conclusion were read to suggest there must be a specific oral or written statement before there could be liability under § 10(b) or Rule 10b-5, it would be erroneous.").

Thus, "[c]onduct itself can be deceptive . . . ." *Id.* However, not all conduct can give rise to primary liability under Section 10(b). Instead, *Stoneridge* suggests that primary liability can exist where: [1] a defendant has a duty to disclose; [2] members of the investing public having knowledge, either actual or presumed of the defendant's conduct; and [3] the deceptive acts being communicated to the investing public. *Id.* Here, those prerequisites for primary liability have been met.

*First*, federal regulations required Grant Thornton, as Tarragons' outside auditor, to conduct a review of the Company's quarterly financial statements. *Cf. Lattanzio*, 476 F.3d at 155 (quoting 17 C.F.R. §210.10-01(d)). A similar obligation applies to a company's annual financial statements filed with the SEC. *See* 17 C.F.R. §210.8-02.

*Second*, these regulations are well-known by the investing public. Indeed, here, Tarragon referred to Grant Thornton's continued review of quarterly financial statements as a reason for

-5-

the delay in filing its quarterly financials with the SEC. *E.g.*, Complaint ¶55.

*Third*, the deceptive acts were communicated to Tarragon investors. Specifically, Tarragon filed quarterly and annual reports with the SEC. *See* Complaint ¶¶23, 27, 30, 33, 36, 39, 44, 48, 51 and 56. Those reports were materially false or misleading. Complaint ¶¶68-91.

Therefore, Grant Thornton is primarily liable for the materially false or misleading statements made by Tarragon in the Company's financial statements filed with the SEC, based upon the duties imposed upon Grant Thornton as an outside auditor through SEC regulations.

## III.   PLAINTIFF HAS PROPERLY ALLEGED A STRONG INFERENCE OF SCIENTER WITH RESPECT TO GRANT THORNTON

The standards for pleading a defendant's recklessness are well settled in this Circuit. They are that the defendant either "[1] knew facts or had access to information suggesting that their public statements were not accurate; or [2] failed to check information they had a duty to monitor." *Novak v. Kasaks*, 216 F.3d 300, 311 (2d Cir. 2000) (internal references omitted). Accountants and public auditors do not enjoy a special dispensation from this standard. *Accord*, *Cyber Media Group v. Island Mort. Network, Inc.*, 183 F. Supp. 2d 559, 575 (S.D.N.Y. 2002) (Seybert, J.) ("any person or entity, including a[n] ... accountant ... may be liable as a primary violator under 10b-5") (citing *Central Bank of Denver v. First Interstate Bank of Denver*, 511 U.S. 164, 191 (1994)).

Applying these standards, it is obvious that the Complaint properly alleges fraud. Grant Thornton clearly had access to the relevant information and clearly disregarded its importance in preparing its public statements. Indeed, Grant Thornton acknowledges as much. *See* PCAOB Report at Appendix C, page 2. This blatant disregard of GAAP by an accounting firm is

sufficient to support a strong inference of scienter. *Accord*, *In re Philips Servs. Corp. Sec. Litig.*, 383 F. Supp. 2d 463, 475 (S.D.N.Y. 2004).

Against these objective facts, Grant Thornton effectively contends that it was too incompetent to apply GAAP and just made a mistake. Grant Thornton Memo. at 13-15. In other words, they were only negligent and not reckless. However, the PCAOB Report disagreed even after receiving a letter from Grant Thornton containing the same arguments as Grant Thornton now makes in its motion to dismiss. *Compare* Grant Thornton Memo. at 13-14 *with* PCAOB Report Appendix C, at page 2. Moreover, Plaintiff's assertion that Grant Thornton acted with intent or recklessly is at least as plausible as Grant Thornton's excuse and, therefore, is sufficient to support a strong inference of scienter. *Accord*, *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, __ U.S. __, 127 S. Ct. 2499, 2507 (2007); *In re Sonus Networks, Inc. Sec. Litig.*, 247 F.R.D. 244, 251 n.7 (D. Mass. 2007).[1]

Similarly, Grant Thornton *knew* that the Tarragon's costs were exceeding its budgets and failed to obtain sufficient competent evidence sufficient to confirm the propriety of Tarragon's recognition of revenues. PCAOB Report at page 5. These facts also support a strong inference of scienter with respect to Grant Thornton's behavior. *Accord, In re Philips Servs. Corp. Sec. Litig.*, 383 F. Supp. 2d at 475 (auditor ignored "red flags" which when aggregated supported an inference of fraudulent intent sufficient to overcome a motion to dismiss) (citing *In re Leslie Fay Cos. Sec. Litig.*, 835 F. Supp. 167, 175 (S.D.N.Y. 1993)).

---

[1] Grant Thornton's arguments as to why it was only negligent should also be disregarded because they amount to an effort to give testimony without allowing Plaintiff the opportunity to test the veracity of the assertions made or whether, in fact, the reasons given by Grant Thornton's lawyers in the brief are the actual reason for the deviation from GAAP.

## IV. PLAINTIFF HAS PROPERLY ALLEGED LOSS CAUSATION

Grant Thornton also asserts that the Complaint fails to properly plead the element of loss causation. This argument must also fail because it is based upon both a misapprehension of controlling legal principles and the well-pleaded allegations of the Complaint.

### A. Allegations of Loss Causation Are Only Subject to the Notice Pleading Requirements of Rule 8(a)(2)

Entirely absent from Grant Thornton's brief is any discussion of the standard which applies to allegations of loss causation. However, it is axiomatic that the standard employed is key to analyzing the adequacy of the underlying pleadings. Here, with respect to loss causation, that standard is notice pleading under Rule 8(a)(2) of the Federal Rules of Civil Procedure

*Dura Phramaceuticals, Inc. v. Broudo*, 544 U.S. 336 (2005), the leading Supreme Court case on loss causation in securities fraud cases, did not explicitly decide the issue but strongly suggests that Rule 8(a)(2) notice pleading provides the applicable standard. *Id.* at 346.[2] Accordingly, courts analyzing the issue have almost universally applied the Rule 8 standards of notice pleading to loss causation allegations. *See, e.g., In re Tower Auto. Sec. Litig.*, 483 F. Supp. 2d 327, 348 (S.D.N.Y. 2007) (Sweet, J.) (citing *In re NYSE Specialists Sec. Litig.*, 405 F. Supp. 2d 281, 315 (S.D.N.Y. 2005)); *see also, Hunt v. Enzo Biochem, Inc.*, 471 F. Supp. 2d 390, 409 n.120 (S.D.N.Y. 2006) (Scheindlin, J.) (collecting post-*Dura* cases applying Rule 8 to allegations of loss causation). "Thus, Plaintiff[ ] needs only plead 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Tower Automative, supra* (quoting Fed. R. Civ. P. 8); *accord, In re Parmalat Sec. Litig.*, 479 F. Supp. 332, 343 n.61 (S.D.N.Y. 2007)

---

[2] *Dura*'s precise holding was that alleging price inflation alone on the date of purchase was an insufficient allegation of loss causation for a Section 10(b) claim. *Id.* at 342.

(Kaplan, J.).

### B. Issues of Loss Causation Should Not be Resolved on a Rule 12(b)(6) Motion

Grant Thornton's effort to have Plaintiff explain every and all of the Company's disclosures, and the intervening factors that may have caused Tarragon's decline in stock value throughout the Class Period is improper at this stage of the proceedings. Explaining the market's reaction to Tarragon's press releases is necessarily fact-intensive and there is no requirement that Plaintiff address or attempt to explain every relevant disclosure the Company may have made during the Class Period. *See, e.g., In re Unumprovident Corp. Sec. Litig.*, 396 F. Supp. 2d 858, 899 (E.D. Tenn 2005) (loss causation pled although the plaintiff did not address the market impact of several relevant disclosures). In addition, as Judge Marrero recently held in *In re DRDGOLD Ltd. Sec. Litig.,* "whether it was in fact other openly disclosed risks that caused the drop in price in the stock [following disclosure of the fraud] is 'a matter for proof at trial and not to be decided on a 12(b)(6) motion to dismiss.'" 472 F. Supp. 2d 562, 576 (S.D.N.Y. 2007) (*quoting Emergent Capital Inv. Mgmt, LLC v. Stonepath Group, Inc.*, 343 F.3d 189, 197 (2d Cir. 2003)). *See also, In re Seitel, Inc. Sec. Litig.*, 447 F. Supp. 2d 693, 713 (S.D. Tex. 2006) (rejecting argument that stock drop following corrective disclosure may have been attributable to matters other than the fraud, because "such an argument is not appropriately made at this stage on a rule 12(b)(6) motion to dismiss").

### C. The Declines in the Price of Tarragon Stock Alleged Are Sufficient to Allege Loss Causation

The standard for alleging loss causation is actually fairly simple. Plaintiff need only "allege facts that support an inference that [the] misstatements and omissions concealed the

-9-

circumstances that bear upon the loss suffered such that plaintiff would have been spared all or an ascertainable portion of that loss absent the fraud." *Lentell v. Merrill Lynch & Co.*, 396 F.3d 161, 175 (2d Cir. 2005). "In its simplest form, this may be achieved by alleging that the market reacted negatively to a 'corrective disclosure,' which revealed an alleged misstatement's falsity or disclosed that allegedly material information had been omitted." *In re AOL Time Warner*, 503 F. Supp. 2d 666, 677 (S.D.N.Y. 2007) (Kram, J.); *see also, Ventura v. Merrill Lynch & Co.*, 07 CIV 6677 (JFK), 2008 U.S. Dist. LEXIS 37993 at *26 (S.D.N.Y. May 8, 2008) (Keenan, J.).

Here, that standard is easily met. Plaintiff has alleged the precise statements which were materially false or misleading by virtue of the failure to properly consolidate Ansonia into Tarragon's financial statements (Complaint ¶¶20, 22, 23, 26, 27, 29, 30, 32, 33, and 35-39) and the market's negative reaction to the disclosure of the truth. Complaint ¶41. Similarly, Plaintiff has alleged the statements that were materially false or misleading as a result of Tarragon's improper revenue recognition (Complaint ¶¶43-45, 47-49, 51-52, 54, and 56) and the market's reaction to the disclosure of those facts. Complaint ¶62; *see also*, Complaint ¶97.[3]

Grant Thornton argues that the Ansonia restatement did not cause any loss because the stock only reacted to an announcement two weeks earlier that the restatement was likely. Grant Thornton Memo. at 21. This argument lacks merit. A disclosure of a possible misstatement can be the basis of loss causation even where the actual misstatement is later confirmed and causes

---

[3] Loss causation can almost be alleged through a decline in the price of a stock attributable to the leaking of the underlying adverse facts to the marketplace prior to the actual final disclosure. *See, e.g., In re NTL, Inc. Sec. Litig*, 02 Civ. 3013 (LAK)(ASP), 2006 U.S. Dist. LEXIS 5346 at *32 (S.D.N.Y. Feb.14, 2006) (plaintiffs have adequately pleaded loss causation by linking "these gradual disclosing events to a slow dissipation in the value of NTL's stock"). *See also, In re Enron Corp. Securities, Derivative & "ERISA" Litigation*, 439 F. Supp. 2d 692, 701 (S.D. Tex. 2006) and *Schleicher v. Wendt*, 529 F. Supp. 2d 959, 966 (S.D. Ind. 2007).

no movement in the price of the stock. *See, e.g., In re Loewen Group Inc. Sec. Litig.*, 395 F. Supp. 2d 211, 218 (E.D. Pa. 2005) (rejecting the defendant's claim that the failure of the market to react to later detailed disclosure disproved loss causation). Indeed, Grant Thornton offers no plausible alternative explanation for the decline in Tarragon's stock on August 9, 2006.[4]

Not leaving any stone unturned, Grant Thornton also argues that there was no loss causation because there was no deception, as the underlying material relating to Ansonia was disclosed in footnotes to Tarragon's financial statements. *See* Grant Thornton Memo. at 23. This argument, like a similar argument made by the Tarragon Defendants that there was no deception with respect to the failure to properly consolidate Ansonia's results into Tarragon's financial statements (*see* Tarragon Defs. Memo. at 9), is infirm for the very same reason which, put briefly, is that as a matter of law a failure to follow GAAP is deceptive. *See* Plaintiff's Memo. in Opp. To Defs. Motion to Dismiss at 9-10.

*In re Omnicom Group, Inc. Sec. Litig*, 02 Civ. 4483 (WHP), 2008 U.S. Dist. LEXIS 6033 (S.D.N.Y. Jan. 29, 2008), cited by Grant Thornton, is not on point. In *Omnicom*, the facts disclosed were already known to the investing public. Here, in contrast, there is no record evidence that investors knew prior to the August 9, 2006 disclosure that Ansonia's results would have to be consolidated with those of Tarragon or the impact of that consolidation.[5]

---

[4] That the price of Tarragon stock may subsequently have increased is irrelevant. *See, e.g., In re Take-Two Interactive Sec. Litig.*, 06 CIV. 803 (SWK), 2008 U.S. Dist. LEXIS 31463 at *113-114 (S.D.N.Y. April 16, 2008) (Kram, J.) (recovery of price decline does not preclude loss causation).

[5] *Joffee v. Lehman Bros., Inc.*, 410 F. Supp. 2d 187, 191 (S.D.N.Y. 2006) and *Teachers' Retirement Sys. Of La. v. Hunter*, 477 F.3d 162, 187 (4th Cir. 2007), cited by Grant Thornton, are similarly distinguishable.

Similarly infirm is Grant Thornton's argument that the decline in Tarragon's stock "coincided with a market decline . . . ." Grant Thornton Memo. at 20. There exists no record evidence or facts of which Grant Thornton has asked this Court to take judicial notice demonstrating that the decline in Tarragon's stock tracked some general implosion in the price of stocks in the homebuilding industry.

Instead, Grant Thornton's argument is woven out of whole cloth. In truth and in fact, the implosion in Tarragon's stock was not experienced by any other homebuilder or rental property owner. If anything, comparison of the price chart for Tarragon's stock compared to that of other companies it identifies as its peer group, demonstrates that there was no such general implosion. *See* Abraham Aff. at ¶12 and Exhibit K thereto.

Grant Thornton's assertion that the extent of the impairment charges, buyer defaults and defaults on loan covenants were all effectively disclosed by a statement Tarragon made in April 2007 that it *might* need to take additional deposits in order to properly recognize revenues under the percentage of completion method. *See* Grant Thornton Memo. at 25. That is an interesting (only in the most charitable usage of the word) contention. However, notwithstanding Tarragon explaining the standard for recognizing revenues, the Company continued to recognize revenues (and fail to take impairment charges) in a manner inconsistent with the acknowledged controlling GAAP standards. Grant Thornton offers no basis for concluding that a reasonable investor could understand from a discussion of controlling accounting principles the nature and extent of the deception which laid at the heart of Tarragon's publicly reported financial results. *Accord*, *Virginia Bankshares v. Sandberg*, 501 U.S. 1083, 1097 (1991) ("[N]ot every mixture with the true will neutralize the deceptive. If it would take a financial analyst to spot the tension between

the one and the other, whatever is misleading will remain materially so, and liability should follow.").[6]

### D. Loss Causation is Adequately Tied to Grant Thornton's Misstatements and the Other Materially Misleading Statements for Which it Was Responsible

Grant Thornton also argues that any disclosures causing a decline in Tarragon's stock price were not tied to Grant Thornton opinions alleged to have been false. *See* Grant Thornton Memo. at 18-19. This argument clearly fails with respect to Grant Thornton's opinion on Tarragon's 2005 financial statements. Indeed, it was the disclosure that Tarragon's publicly reported financial results, which Grant Thornton had opined complied with GAAP, did not, in fact, comply with GAAP that is alleged to have caused a decline in the price of Tarragon's stock price. Complaint ¶37.

*Lattanzio*, upon which Grant Thornton relies, is not on point. In *Lattanzio*, the auditor had issued a going concern report with respect to the issuer (*i.e.*, that it was at risk of going bankrupt). In addition, there were many other misstatements alleged to be the source of loss causation. *Id.* 476 F.3d at 158. This warning concerning the issuer's viability was held to outweigh any other underlying misstatements in the issuer's publicly reported financial statements when combined with the multitude of other alleged misstatements. *Id.*

Here, in contrast, Grant Thornton did not issue a "going concern" opinion. Also, at the time of the Ansonia disclosure, there were no other misstatements that in any way obscure or call

---

[6] Grant Thornton also argues that the cash flow restatement was not the cause of any damages. Plaintiff concedes this point as it was not his intention to allege loss causation stemming from that restatement since the Complaint does not allege that this particular disclosure of falsity in the Company's prior public statements had any identifiable impact on the price of Tarragon's stock.

-13-

into question the significance of the failure to consolidate and its ultimate impact on the market price of Tarragon's common stock.

Grant Thornton's remaining arguments on loss causation simply restate Grant Thornton's assertion that it is not liable for Tarragon's misrepresentations because of the failure of the Complaint to allege a specific misstatement of fact by Grant Thornton. However, as demonstrated above (*see* Point II), Grant Thornton, in fact, has such liability based upon the Supreme Court's recent decision in *Stoneridge*.

## V.   IF THE COURT DETERMINES THAT ANY ASPECT OF THE COMPLAINT IS INADEQUATELY PLED, LEAVE TO AMEND SHOULD BE GRANTED

Plaintiff respectfully requests leave to amend should the Court find any aspect of Plaintiffs' claims against Grant Thornton to be inadequately pled and, for the sake of brevity, incorporates herein by reference the arguments made on this issue in Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Dismiss at Point V.

Case 1:07-cv-08689-PKC    Document 16    Filed 05/16/2008    Page 20 of 20

## CONCLUSION

Therefore, Grant Thornton's motion to dismiss should be denied in its entirety, or, in the alternative, Plaintiff should be granted leave to amend.

Dated: May 16, 2007

                                                    **ABRAHAM, FRUCHTER & TWERSKY, LLP**

                                                    Jeffrey S. Abraham (JA-2946)
                                                    Arthur J. Chen (AC-5233)
                                                    One Penn Plaza, Suite 2805
                                                    New York, N.Y. 10119
                                                    Telephone: (212) 279-5050
                                                    Fax: (212) 279-3655

                                                    **Plaintiff's Lead Counsel**